# CAROLE BURNHAM *v.* KARL AND GELB, P.C., ET AL.
## (SC 16050)

McDonald, C. J., and Norcott, Sullivan, Callahan and Mihalakos, Js.

Argued October 27, 1999—officially released February 15, 2000

*James S. Brewer*, with whom, on the brief, was *William O'Shea*, for the appellant (plaintiff).

*Richard P. Weinstein*, with whom was *Nathan A. Schatz*, for the appellees (defendants).

*Jonathan L. Gould* filed a brief for the Connecticut Employment Lawyers Association as amicus curiae.

*Opinion*

SULLIVAN, J. In this certified appeal, the plaintiff, Carole Burnham, appeals from the judgment of the Appellate Court affirming the trial court's judgment rendered following the granting of the defendants' motion for summary judgment. This appeal requires us to consider whether the Appellate Court properly concluded that the plaintiff was precluded from bringing a cause of action for wrongful discharge against her former employer. We affirm the Appellate Court's judgment.

The opinion of the Appellate Court sets forth the following relevant facts and procedural history. "The named defendant, Karl and Gelb, P.C., is a dental practice located in West Hartford that employs two periodontists, the defendants Edward Karl and David Gelb. On July 6, 1993, the plaintiff . . . was hired by the defendants as an office manager. On November 5, 1993, the plaintiff filed an anonymous complaint with the Connecticut State Dental Association (dental association) alleging that the defendants engaged in unsanitary and unhealthy practices in violation of the federal Occupational Safety and Health Act [of 1970] . . . 29 U.S.C. § 651 et seq. On November 22, 1993, the plaintiff was terminated by the defendants and thereafter filed a complaint with the Hartford office of the Occupational Safety and Health Administration alleging that she was terminated by the defendants in retaliation for her complaint to the dental association. The plaintiff's complaint was administratively closed in February, 1994, due to the plaintiff's 'lack of response' to correspondence from the Hartford office of the Occupational Safety and Health Administration.

"On January 24, 1995, the plaintiff filed a three count amended complaint alleging breach of contract, negligent misrepresentation and wrongful termination. On September 23, 1996, the defendants moved for summary judgment. On March 7, 1997, the trial court granted the defendants' motion for summary judgment as to each count of the plaintiff's amended complaint." *Burnham* v. *Karl & Gelb, P.C.*, 50 Conn. App. 385, 386–87, 717 A.2d 811 (1998). Additional facts will be provided as necessary.

The plaintiff subsequently appealed from the trial court's judgment to the Appellate Court. In her appeal to the Appellate Court, the plaintiff claimed that the "trial court improperly granted summary judgment in favor of the defendants as to her claims (1) of breach

of contract, (2) of negligent misrepresentation and (3) of wrongful discharge." Id., 386. The Appellate Court affirmed the judgment of the trial court with respect to each claim. See generally id., 386–97.

We granted the plaintiff's petition for certification limited to the following issues relating to the plaintiff's wrongful discharge claim: First, "[w]hether the Appellate Court erred in concluding that the plaintiff's attempted use of violations of the federal Occupational Safety and Health Act (act) to support a claim for wrongful termination failed as a matter of law because the existence of a statutory remedy under the act precluded the plaintiff's claim of wrongful discharge based on a violation of public policy?" *Burnham* v. *Karl & Gelb, P.C.,* 247 Conn. 944, 723 A.2d 320 (1998). Second, "[w]hether the Appellate Court erred in concluding that an administrative remedy existed under the act?" Id. Third, "[w]hether the Appellate Court erred in concluding that no material fact in dispute existed as to whether the plaintiff exhausted her supposed administrative remedy with the Occupational Safety and Health Administration?" Id. And fourth, "[w]hether the Appellate Court erred in concluding that the plaintiff did not have a cause of action for wrongful discharge against her employer for refusing to work under conditions that pose a substantial risk of death, disease or physical harm and that are not contemplated within the scope of the plaintiff's duties?" Id., 944–45. We answer each of the certified questions in the negative and, accordingly, affirm the judgment of the Appellate Court.

The standard of review applicable to all four certified issues is well settled. "In reviewing a trial court's ruling on a motion for summary judgment when the material facts are undisputed, we must decide whether the trial court erred in concluding that the moving party was entitled to judgment as a matter of law. . . . [O]ur review of the ruling of the trial court is plenary, and

we must determine whether the trial court's conclusions are legally and logically correct and find support in the facts appearing in the record." (Citations omitted.) *Covelli* v. *Commissioner of Revenue Services*, 235 Conn. 539, 544, 668 A.2d 699 (1995), vacated on other grounds, 518 U.S. 1031, 116 S. Ct. 2577, 135 L. Ed. 2d 1092 (1996).

I

The plaintiff's first claim is that the Appellate Court improperly concluded that she was precluded as a matter of law from bringing a common-law cause of action for wrongful discharge based on a violation of public policy embodied in General Statutes (Rev. to 1993) § 31-51m.[1] The Appellate Court concluded that the plaintiff's claim that she was terminated by the defendants for reporting violations of the act could not support a common-law cause of action for wrongful discharge based on the existence of a statutory remedy available to her

---

[1] General Statutes (Rev. to 1993) § 31-51m provides in relevant part: "(b) No employer shall discharge, discipline or otherwise penalize any employee because the employee, or a person acting on behalf of the employee, reports, verbally or in writing, a violation or a suspected violation of any state or federal law or regulation or any municipal ordinance or regulation to *a public body*, or because an employee is requested by a public body to participate in an investigation, hearing or inquiry held by that public body, or a court action. . . . The provisions of this subsection shall not be applicable when the employee knows that such report is false.

"(c) Any employee who is discharged, disciplined or otherwise penalized by his employer in violation of the provisions of subsection (b) may, after exhausting all available administrative remedies, bring a civil action, within ninety days of the date of the final administrative determination or within ninety days of such violation, whichever is later, in the superior court for the judicial district where the violation is alleged to have occurred or where the employer has its principal office, for the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he would have otherwise been entitled if such violation had not occurred. . . . Any employee found to have knowingly made a false report shall be subject to disciplinary action by his employer up to and including dismissal. . . ." (Emphasis added.)

under 29 U.S.C. § 660 (c).[2] *Burnham* v. *Karl & Gelb, P.C.*, supra, 50 Conn. App. 395–96.

We conclude that the plaintiff was precluded from bringing a cause of action for wrongful discharge for three reasons. First, we agree with the trial court that the plaintiff failed to present evidence that created a material issue of fact as to whether her termination violated the public policy embodied in § 31-51m. Second, even if we were to conclude that the plaintiff's termination violated the public policy embodied in § 31-51m, the plaintiff's common-law wrongful discharge claim would be precluded by § 31-51m (c), which provides a statutory remedy for employer conduct prohibited under § 31-51m (b). Third, we agree with the Appellate Court that the plaintiff's common-law cause of action for wrongful discharge is precluded because she had a remedy for her employer's conduct under 29 U.S.C. § 660 (c).

In *Sheets* v. *Teddy's Frosted Food, Inc.*, 179 Conn. 471, 427 A.2d 385 (1980), we recognized that it is a

[2] Title 29 of the United States Code, § 660 (c) provides: "(1) No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter.

"(2) Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may, within thirty days after such violation occurs, file a complaint with the Secretary [of Labor] alleging such discrimination. Upon receipt of such complaint, the Secretary shall cause such investigation to be made as he deems appropriate. If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall bring an action in any appropriate United States district court against such person. In any such action the United States district courts shall have jurisdiction, for cause shown to restrain violations of paragraph (1) of this subsection and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay.

"(3) Within 90 days of the receipt of a complaint filed under this subsection the Secretary shall notify the complainant of his determination under paragraph (2) of this subsection." 29 U.S.C. § 660 (c) (1994).

"general proposition that contracts of permanent employment, or for an indefinite term, are terminable at will." Id., 474; see, e.g., *Somers* v. *Cooley Chevrolet Co.*, 146 Conn. 627, 629, 153 A.2d 426 (1959); *Fisher* v. *Jackson*, 142 Conn. 734, 736, 118 A.2d 316 (1955). In *Sheets*, however, this court "recognized a common law cause of action in tort for the discharge of an at will employee if the former employee can prove a demonstrably *improper* reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." (Emphasis in original; internal quotation marks omitted.) *Carbone* v. *Atlantic Richfield Co.*, 204 Conn. 460, 466–67, 528 A.2d 1137 (1987), quoting *Sheets* v. *Teddy's Frosted Food, Inc.*, supra, 475.

In interpreting this exception, "we note our adherence to the principle that the public policy exception to the general rule allowing unfettered termination of an at-will employment relationship is a narrow one . . . . We are mindful that courts should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation." (Citation omitted; internal quotation marks omitted.) *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 79, 700 A.2d 655 (1997).

In *Atkins* v. *Bridgeport Hydraulic Co.*, 5 Conn. App. 643, 501 A.2d 1223 (1985), the Appellate Court recognized a limitation on the public policy exception to the at-will doctrine. The court in *Atkins* concluded: "A finding that certain conduct contravenes public policy is not enough by itself to warrant the creation of a contract remedy for wrongful dismissal by an employer. The cases which have established a tort or contract remedy for employees discharged for reasons violative of public policy have relied upon the fact that in the context of their case the employee was *otherwise without remedy* and that permitting the discharge to go unredressed would leave a valuable social policy to

go unvindicated." (Emphasis added; internal quotation marks omitted.) Id., 648.

In this case, the plaintiff alleged that she was terminated for reporting the defendants' unsafe dental practices that violated the act. The plaintiff relied upon, inter alia, the public policy against retaliatory discharges embodied in § 31-51m, to support her claim of wrongful termination.[3] Section 31-51m (b) prohibits employers from retaliating against employees who report "a violation or a suspected violation of any state or federal law . . . to a *public body* . . . ." (Emphasis added.) General Statutes (Rev. to 1993) § 31-51m (b). Section 31-51m defines "public body" in relevant part as "any public agency, as defined in subsection (a) of [General Statutes (Rev. to 1993) §] 1-18a . . . ." General Statutes (Rev. to 1993) § 31-51m (a) (4). Section 1-18a, in turn, defines public agency as "any executive, administrative or legislative office of the state or any political subdivision of the state and any state or town agency, any department, institution, bureau, board, commission, authority or official of the state or of any city, town, borough, municipal corporation, school district, regional district or other district or other political subdivision of the state, including any committee of any such office, subdivision, agency, department, institution, bureau, board, commission, authority or official, and also includes any judicial office, official or body or committee thereof but only in respect to its or their administrative functions." General Statutes (Rev. to 1993) § 1-18a (a).

---

[3] The plaintiff's amended complaint alleged that "in retaliation for [the plaintiff's report of] the defendants' violations, the plaintiff was terminated on November 22, 1993, in gross violation of public policy, as embodied in the Connecticut common law of wrongful discharge, [General Statutes §§] 31-51, 31-51m, 31-51q, and 46a-60." Because §§ 31-51, 31-51q and 46a-60 are not relevant to the certified issues before this court, the public policy against retaliatory discharges embodied in § 31-51m is the only public policy at issue in this appeal.

The plaintiff alleges that she was terminated for reporting violations of the act to the dental association. The trial court concluded that the "[d]ental [a]ssociation does not . . . fit within the definition of 'public body' contained in [§ 31-51m]." The plaintiff has not argued, nor is there any evidence in the record, that the dental association is a public body as defined in § 31-51m (a) (4). Therefore, because the plaintiff failed to present evidence that created a material issue of fact as to whether her termination violated the provisions of § 31-51m, we conclude that the plaintiff cannot use the public policy embodied therein to support her claim of wrongful discharge based on a violation of public policy.[4]

Alternatively, even if we were to assume that the plaintiff's termination violated the public policy embodied in § 31-51m, we would still conclude that the plaintiff's claim is precluded by virtue of the existence of a

[4] The Appellate Court, in reviewing the trial court's conclusion that the plaintiff could not support her wrongful discharge claim on the basis that her termination by the defendants violated § 31-51m, concluded: "Although the plaintiff relies on § 31-51m to support her cause of action for public policy wrongful discharge, she has not brought a separate claim under that statute. The trial court, therefore, improperly concluded that the plaintiff failed to satisfy the statutory requirements of a § 31-51m claim (i.e., a report made to a 'public body' . . .)." *Burnham* v. *Karl & Gelb, P.C.,* supra, 50 Conn. App. 394.

We agree with the Appellate Court that the plaintiff did not bring a cause of action directly under § 31-51m, but, rather, brought a cause of action for wrongful discharge based on the public policy embodied in § 31-51m. Because the plaintiff based her cause of action for wrongful discharge on the public policy embodied in § 31-51m, however, she was required to present evidence that created a material issue of fact with respect to whether the defendants' conduct violated § 31-51m. Therefore, it was not improper for the trial court to consider whether the plaintiff had alleged that the defendants' conduct violated § 31-51m in considering whether the plaintiff had supported her cause of action for wrongful discharge based on a violation of the public policy embodied in that statute. Because the Appellate Court did not find that the plaintiff's cause of action for wrongful discharge was supported by § 31-51m, however, it was harmless for the Appellate Court to have concluded that the trial court's conclusion was improper.

statutory remedy under that statute. Section 31-51m (c) provides a statutory remedy for employees who are harmed by employer conduct in violation of § 31-51m (b). Section 31-51m (c) provides in relevant part: "Any employee who is discharged, disciplined or otherwise penalized by his employer in violation of the provisions of subsection (b) may, after exhausting all administrative remedies, bring a civil action, within ninety days of the date of the final administrative determination or within ninety days of such violation . . . ." General Statutes (Rev. to 1993) § 31-51m (c). The existence of this statutory remedy precludes the plaintiff from bringing a common-law wrongful discharge action based on an alleged violation of § 31-51 (b). See *Atkins* v. *Bridgeport Hydraulic Co.*, supra, 5 Conn. App. 648 (plaintiff can bring wrongful discharge claim only when he or she is "otherwise without remedy" [internal quotation marks omitted]).

Finally, the plaintiff's claim is precluded for a third reason. Title 29 of the United States Code, § 660 (c) (2), provides a statutory administrative remedy for employees, such as the plaintiff, who allege that they were discharged in retaliation for reporting violations of the act.[5] That statute provides that "an employee who believes that he has been discharged or otherwise discriminated against" by any employer for reporting violations of the act may file a complaint with the United

[5] Unlike § 31-51m (b), which requires the employee complaint be made to a "public body," the federal statute contains no such limitation. See 29 U.S.C. § 660 (c) (1) (1994) ("[n]o person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this [act]"); see also *Donovan* v. *R.D. Andersen Construction Co.*, 552 F. Sup. 249, 252–53 (D. Kan. 1982) (employee's communications with media regarding conditions of workplace are protected under 29 U.S.C. § 660 [c]). Therefore, the plaintiff's complaint to the dental association regarding the defendants' alleged violations of the act brought her within the antiretaliatory protections of 29 U.S.C. § 660 (c).

States secretary of labor (secretary of labor). 29 U.S.C. § 660 (c) (2) (1994). If, after conducting an investigation, the secretary of labor determines that the employee was discharged for reporting such violations, the secretary of labor shall bring an action in the United States District Court against such employer. 29 U.S.C. § 660 (c) (2) (1994). The United States District Court has jurisdiction in such actions to "order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay." 29 U.S.C. § 660 (c) (2) (1994). Therefore, we conclude that, because the plaintiff had a remedy under 29 U.S.C. § 660 (c) (2) for the retaliatory discharge she had alleged, she was not "otherwise without [a] remedy"; (internal quotation marks omitted) *Atkins* v. *Bridgeport Hydraulic Co.*, supra, 5 Conn. App. 648; and her common-law cause of action for wrongful discharge is precluded.[6] Several other courts also have concluded that the existence of a remedy under 29 U.S.C. § 660 (c) (2)

---

[6] Although not cited by either party, it should be noted that the plaintiff also was precluded from bringing a common-law cause of action for wrongful discharge because General Statutes § 31-379 provided the plaintiff with a statutory administrative remedy under state law nearly identical to that of 29 U.S.C. § 660 (c). Section 31-379 provides: "Discrimination against employee filing complaint. (a) No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter.

"(b) Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this section may, within thirty days after such violation occurs, file a complaint with the [labor] commissioner alleging such discrimination. Upon receipt of such complaint the commissioner shall cause such investigation to be made as he deems appropriate. If upon such investigation the commissioner determines that the provisions of this subsection have been violated he shall bring an action in the superior court for the judicial district of Hartford against such person. In any such action the court shall have jurisdiction, for cause shown, to restrain violations of subsection (a) of this section and to order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay.

precludes a common-law cause of action based on the public policy exception to the at-will doctrine of employment law. E.g., *Miles* v. *Martin Marietta Corp.*, 861 F. Sup. 73, 74 (D. Colo. 1994) (applying Colorado law); *Braun* v. *Kelsey-Hayes Co.*, 635 F. Sup. 75, 79–80 (E.D. Pa. 1986) (applying Pennsylvania law); *Walsh* v. *Consolidated Freightways, Inc.*, 278 Or. 347, 352–53, 563 P.2d 1205 (1977). But see, e.g., *Sorge* v. *Wright's Knitwear Corp.*, 832 F. Sup. 118, 121 (E.D. Pa. 1993) (Pennsylvania common-law action for wrongful termination based on violation of public policy is not precluded by 29 U.S.C. § 660 [c]). See generally annot., Liability for Retaliation Against At-Will Employee for Public Complaints or Efforts Relating to Health or Safety, 75 A.L.R.4th 13 (1990).

The plaintiff argues, however, that, because her remedy under 29 U.S.C. § 660 (c) (2) would not be equivalent to her common-law wrongful discharge remedy were we to recognize such an action, her statutory remedy does not provide her with an adequate remedy. For example, the plaintiff notes that, while she would have the right to prosecute her own claim if she were allowed to bring a common-law cause of action for wrongful discharge, she is dependent upon the secretary of labor to determine that her case is worthy of prosecution under 29 U.S.C. § 660 (c) (2).

We agree that the plaintiff's statutory remedy under 29 U.S.C. § 660 (c) (2) is not equivalent to a common-law cause of action for wrongful discharge. There is nothing in *Atkins* v. *Bridgeport Hydraulic Co.*, supra, 5 Conn. App. 643, however, to suggest that a statutory remedy must be equivalent to a potential common-law

"(c) Within ninety days of the receipt of a complaint filed under this section the commissioner shall notify the complainant and the employer of his determination of such complaint."

The legislature made technical amendments to § 31-379 in 1993 and 1995 that are not relevant to this appeal.

cause of action for wrongful termination in order for the common-law cause of action to be precluded. Rather, the court in *Atkins* relied upon *Wehr* v. *Burroughs Corp.*, 438 F. Sup. 1052 (E.D. Pa. 1977), aff'd in relevant part, 619 F.2d 276 (3d Cir. 1980), in which the court wisely stated that, in interpreting the public policy exception, "sound policy dictates that the statutory remedial scheme be adhered to since we can presume that the legislature would have provided additional relief in the statute if it thought it necessary." Id., 1056; see also *Hunt* v. *Prior*, 236 Conn. 421, 434, 673 A.2d 514 (1996) ("[i]t is not the plaintiff's preference for a particular remedy that determines whether the remedy . . . is adequate . . . and an administrative remedy, in order to be adequate, need not comport with the plaintiffs' opinion of what a perfect remedy would be" [citation omitted; internal quotation marks omitted]).

Furthermore, *Atkins* is fully consistent with our statements in *Parsons* v. *United Technologies Corp.*, supra, 243 Conn. 66, "that the public policy exception to the general rule allowing unfettered termination of an at-will employment relationship is a narrow one . . . [and] that courts should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation." (Citation omitted; internal quotation marks omitted.) Id., 79. Thus, we conclude that the plaintiff's common-law cause of action for wrongful discharge is precluded because she had a remedy under 29 U.S.C. § 660 (c) for her alleged retaliatory termination.

II

The plaintiff's second claim is that the Appellate Court improperly concluded that an administrative remedy existed under 29 U.S.C. § 660 (c) for her wrongful termination claim. We disagree.

As we previously discussed in part I of this opinion, 29 U.S.C. § 660 (c) (2) establishes a procedure by which an employee can lodge a complaint with the secretary of labor alleging that he or she was discriminated against for filing any complaint about an employer's violation of the act. If, after conducting an investigation, the secretary of labor determines that the employer has violated the antiretaliatory discharge provision of 29 U.S.C. § 660 (c), the secretary of labor is required to pursue judicial remedies on behalf of the employee. 29 U.S.C. § 660 (c) (2) (1994).

Many courts have concluded that 29 U.S.C. § 660 (c) (2) provides a remedy for an employee who is terminated in retaliation for filing a complaint about an employer's alleged violation of the act. E.g., *Miles* v. *Martin Marietta Corp.*, supra, 861 F. Sup. 74; *Braun* v. *Kelsey-Hayes Co.*, supra, 635 F. Sup. 80; *Walsh* v. *Consolidated Freightways, Inc.*, supra, 278 Or. 351–52. Even the court in *Sorge* v. *Wright's Knitwear Corp.*, supra, 832 F. Sup. 118, which held that a plaintiff's common-law action for wrongful discharge is not precluded by 29 U.S.C. § 660 (c) (2), acknowledged that 29 U.S.C. § 660 (c) (2) provides a "statutory remedy." Id., 121. We agree that "[t]here is no doubt that . . . 29 U.S.C. § 660 (c) provides a statutory remedy"; *Holmes* v. *Schneider Power Corp.*, 628 F. Sup. 937, 938 (W.D. Pa.), aff'd, 806 F.2d 252 (3d Cir. 1986); for an employee under such circumstances.

## III

The plaintiff's third claim is that the Appellate Court erred in concluding that no material factual dispute existed as to whether the plaintiff exhausted her administrative remedy with the Occupational Safety and Health Administration (administration).[7] We disagree.

[7] We note that the certified issue with respect to this claim is "[w]hether the *Appellate Court* erred in concluding that no material fact in dispute existed as to whether the plaintiff exhausted her supposed administrative remedy with the Occupational Safety and Health Administration?" (Empha-

We note as a preliminary matter that, because we concluded in part I of this opinion that the plaintiff's common-law wrongful discharge action is precluded by virtue of the existence of a statutory remedy, we reach the issue of whether the plaintiff exhausted her administrative remedies as an alternative basis upon which to affirm the judgment. Therefore, even if we were to hold that the trial court improperly concluded that there was no material fact in dispute as to whether the plaintiff had failed to exhaust her administrative remedies, the plaintiff still would not have been able to maintain a common-law cause of action for wrongful discharge because of our conclusion in part I of this opinion.

The following additional facts are necessary to resolve this claim. The record reveals that the complaint that the plaintiff filed with the administration was received on or about November 22, 1993. The trial court concluded that the plaintiff's complaint was closed "due to the plaintiff's failure to respond to [administration correspondence]." The plaintiff claims, however, that "any lack of response [to correspondence from the administration] was due to the plaintiff's change of address . . . ." Nevertheless, the plaintiff does not claim that she informed the administration of her address change. The record also reveals that the administration previously had informed the plaintiff that it was her "responsibility to advise the [administration] of any changes in [her] address . . . ."

The plaintiff argues, however, that, "at the very least a material factual dispute exists as to whether [the]

sis added.) *Burnham* v. *Karl & Gelb, P.C.*, supra, 247 Conn. 944. The Appellate Court did not reach this issue in its opinion, however, presumably because it concluded that the plaintiff's cause of action was precluded by virtue of the existence of a statutory remedy. See generally *Burnham* v. *Karl & Gelb, P.C.*, supra, 50 Conn. App. 391–97. Therefore, we will review whether the *trial court* properly concluded that there was no material fact in dispute as to whether the defendant had failed to exhaust her administrative remedies.

plaintiff exhausted her supposed administrative remedy with [the administration]." The plaintiff supports her argument by asserting that "numerous correspondence exist[ed] between [the administration] and the plaintiff's counsel *during February 1994 and thereafter* which asserted [the] plaintiff's claims of retaliatory discharge." (Emphasis added.) A review of the record, however, reveals no correspondence from the plaintiff to the administration during the month of February, 1994, when the administration determined that it would close the plaintiff's case based on the plaintiff's failure to respond to administration correspondence.[8]

The record does, however, reveal a letter from the administration to the plaintiff's attorney that provides a detailed time line of actions taken by the administration with respect to the plaintiff's complaint. The plaintiff has not contested the accuracy of this time line. The time line indicates that, on February 14, 1994, the administration sent a letter to the plaintiff advising her that her case would be closed unless she returned, no later than February 18, 1994, a copy of a complaint statement that had been mailed to her on January 24, 1994. The plaintiff did not return the statement by February 18, 1994. The plaintiff did, however, return a copy of the statement on March 15, 1994, and inquired as to the status of her case on March 30, 1994, at which time she was informed of the reasons for the administration's decision to close her case. Approximately twenty days later, on April 20, 1994, the plaintiff filed an action in the Superior Court alleging, inter alia, wrongful discharge.

When a plaintiff has "available to him administrative remedies that could have afforded him meaningful relief

---

[8] It should be noted that the administration was required to notify the plaintiff, within ninety days of receiving her complaint, of its determination following the investigation of her claim. 29 U.S.C. § 660 (c) (3) (1994); see footnote 2 of this opinion. Therefore, because the administration received the plaintiff's complaint on November 22, 1993, the administration was required to inform the plaintiff of its determination by February 20, 1994.

. . . [h]is failure to [properly pursue those remedies] forecloses his access to judicial relief, because it deprive[s] the trial court of jurisdiction to hear his complaint." *Sullivan* v. *Board of Police Commissioners*, 196 Conn. 208, 217–18, 491 A.2d 1096 (1985). In addition, when a "plaintiff fail[s] to follow the administrative route prescribed by the legislature for his claim"; *Osborne* v. *Rocklen Automotive Parts & Service, Inc.*, 4 Conn. App. 423, 425, 494 A.2d 622 (1985); the plaintiff fails to exhaust his or her administrative remedies. A plaintiff's preference "for a remedy at [an] earlier stage of the proceedings is of no moment when he has not exhausted other available administrative remedies." *Johnson* v. *Statewide Grievance Committee*, 248 Conn. 87, 102, 726 A.2d 1154 (1999).

In this case, the plaintiff may have obtained meaningful relief had she exhausted her remedy with the administration. Instead of following the prescribed administrative route, however, the plaintiff attempted to avail herself of judicial action. We conclude that, by not timely responding to the administrative agency charged with investigating her complaint, the plaintiff failed to exhaust her administrative remedies. Therefore, the trial court properly concluded that no material fact in dispute existed as to whether the plaintiff had exhausted her administrative remedy with the administration.

## IV

The plaintiff's final claim is that the Appellate Court erred in concluding that she did not have a cause of action for wrongful discharge against the defendants "for refusing to work under conditions that pose a substantial risk of death, disease or physical harm and that are not contemplated within the scope of the [plaintiff's] duties." The plaintiff broadly asserts that the Appellate Court improperly concluded that she did not have a

cause of action for wrongful discharge under the circumstances of this case.

The defendants argue that this court should not address this issue because this claim was never presented either to the Appellate Court or the trial court. The defendants assert that the plaintiff's claim before both the trial court and the Appellate Court was that she could maintain a cause of action for wrongful discharge on the basis of a purported *retaliatory* discharge, not on the basis of any *refusal* to work under allegedly unsafe working conditions. We agree with the defendants.

The plaintiff notes in her brief to this court that General Statutes § 31-49 mandates that "[i]t shall be the duty of the master to exercise reasonable care to provide for his servant a reasonably safe place in which to work . . . ." Before the trial court, however, the plaintiff never relied on this statute in support of her wrongful discharge claim. See footnote 3 of this opinion. Moreover, neither the plaintiff's amended complaint nor the trial court's memorandum of decision on the defendants' motion for summary judgment refers to any claim by the plaintiff that she was discharged for refusing to work under unsafe working conditions. Furthermore, the plaintiff conceded at oral argument that her claim that she was discharged for refusing to work under unsafe conditions was "not raised as a legal argument" before the trial court. Therefore, we conclude that the plaintiff did not claim in the trial court that she was discharged for refusing to work under unsafe working conditions.

"It is well established that an appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. Practice Book § 60-5; *Yale University* v. *Blumenthal*, 225 Conn. 32, 36 n.4, 621 A.2d 1304 (1993) (issue not reviewed because not raised at

trial). . . . [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court. . . . *Crest Pontiac Cadillac, Inc.* v. *Hadley*, 239 Conn. 437, 444 n.10, 685 A.2d 670 (1996) (claims neither addressed nor decided by trial court are not properly before appellate tribunal) . . . ." (Citations omitted; internal quotation marks omitted.) *Torres* v. *Waterbury*, 249 Conn. 110, 133, 733 A.2d 817 (1999). "We will not promote a Kafkaesque academic test by which [a trial judge] may be determined on appeal to have failed because of questions never asked of him or issues never clearly presented to him." (Internal quotation marks omitted.) *Skrzypiec* v. *Noonan*, 228 Conn. 1, 22 n.13, 633 A.2d 716 (1993). Therefore, we decline to review this claim because it was not raised at trial.[9]

The judgment of the Appellate Court is affirmed.

In this opinion NORCOTT, CALLAHAN and MIHA-LAKOS, Js., concurred.

MCDONALD, C. J., dissenting. I disagree with the majority's conclusion that the plaintiff's common-law wrongful discharge claim is precluded because she had administrative remedies available under federal law; 29 U.S.C. § 660 (c) (2); for the defendants' allegedly retaliatory termination of her employment. The majority concludes that the plaintiff's common-law wrongful discharge claim is prohibited because 29 U.S.C. § 660 (c) (2) provides an adequate remedy for employees who allege that they were discharged in retaliation for reporting conduct that is prohibited under the Occupa-

---

[9] We note, however, that even if the plaintiff had raised this claim, a question would remain as to whether, under the facts of this case, the plaintiff's statutory remedy afforded by 29 U.S.C. § 660 (c) (2) would preclude a common-law cause of action for wrongful discharge against the defendants for refusing to work under conditions that pose a substantial risk of death, disease or physical harm and that were not contemplated within the scope of the plaintiff's duties.

tional Safety and Health Act (OSHA) of 1970. 29 U.S.C. § 651 et seq.

In *Sheets* v. *Teddy's Frosted Food, Inc.*, 179 Conn. 471, 475, 427 A.2d 385 (1980), we recognized a common-law cause of action in tort for the discharge of an at-will employee "if the former employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." More recently, this court concluded that "claims brought pursuant to the public policy limitation on the at-will employment doctrine can be predicated on the violation of public policy expressed in a federal statute." *Faulkner* v. *United Technologies Corp.*, 240 Conn. 576, 585–86, 693 A.2d 293 (1997).

The federal courts have interpreted Connecticut law to preclude a common-law wrongful discharge claim only when an adequate administrative remedy existed. See *McCarthy* v. *Dept. of Mental Health*, 55 F. Sup. 2d 110, 117 (D. Conn. 1999) (common-law remedy precluded where adequate statutory remedy available); *Bennett* v. *Beiersdorf*, 889 F. Sup. 46, 49 (D. Conn. 1995) (common-law remedy precluded where sufficient statutory remedy available). Because the federal statutory remedy in the present case provides an inadequate remedy giving little justice to the plaintiff, this action should not be barred. Other jurisdictions have agreed with this view. See *Flenker* v. *Willamette Industries, Inc.*, 266 Kan. 198, 967 P.2d 295, 300–303 (1998) (common-law remedy permitted because remedy under OSHA inadequate); *D'Angelo* v. *Gardner*, 107 Nev. 704, 719–22, 819 P.2d 206 (1991) (common-law remedy permitted because remedy under Nevada OSHA not comprehensive).

As the majority acknowledges, the plaintiff's remedy under 29 U.S.C. § 660 (c) (2) is not equivalent to a

common-law wrongful discharge cause of action. The federal statute provides that any employee who believes that he has been discharged or otherwise discriminated against by any person for reporting violations of OSHA may file a complaint with the secretary of labor. If, after conducting an investigation, the secretary of labor determines that the employee was discharged for reporting such violations, the secretary shall bring an action in United States District Court against the employer. The decision to bring an action is in the sole discretion of the secretary of labor.

Because the secretary has broad discretion in determining whether to bring an action, there is a real possibility that a retaliatory discharge may go unredressed. "[T]he Secretary's discretion is a significant limitation on the employee's right of redress. What would, in a common-law tort action, be the decision of the plaintiff and plaintiff's counsel is, under [29 U.S.C. § 660 (c) (2)], the decision of a government employee. The concerns of the government employee could range from budget constraints to political pressure." *Flenker* v. *Willamette Industries, Inc.*, supra, 967 P.2d 301. Because of the many factors the secretary must consider before bringing an action, it may be that OSHA's important public policy would not be vindicated in this case. This would not occur if the plaintiff were allowed to bring an action and enforce that policy. I would also note that there is nothing in the language of 29 U.S.C. § 660 (c) to support the conclusion that the administrative remedy in 29 U.S.C. § 660 (c) is the exclusive remedy.

I accordingly respectfully dissent.